1  ROBERT W. BROWNLIE (Bar No. 138793)
   robert.brownlie@dlapiper.com
2  GERARD A. TRIPPITELLI (Bar. No. 235788)
   jerry.trippitelli@dlapiper.com
3  NOAH A. KATSELL (Bar No. 217090)
   noah.katsell@dlapiper.com
4  DLA PIPER US LLP
   401 B Street, Suite 1700
5  San Diego, CA  92101-4297
   Tel:  619.699.2700
6  Fax:  619.699.2701

7  Attorneys for Defendants
   REMEC, INC., RONALD E. RAGLAND,
8  WINSTON E. HICKMAN

9

10                    UNITED STATES DISTRICT COURT

11                   NORTHERN DISTRICT OF CALIFORNIA

12                      SAN FRANCISCO DIVISION

13  | IN RE: | CASE NO.  CV 08 80 124 MISC. (EDL) |
14  | REMEC INCORPORATED SECURITIES LITIGATION | [04 CV 1948 JLS (AJB) Southern District of California] |
15
16  | This Document Relates to: | **OPPOSITION TO MOTION BY THIRD PARTY WITNESS LISA ROBINSON TO QUASH AND/OR MODIFY SUBPOENAS AND/OR FOR PROTECTIVE ORDER** |
17  |                     ALL ACTIONS |
18  | | Judge:     Hon. Elizabeth D. Laporte |
19  | | Crtrm:     E |
    | | Date:      August 5, 2008 |
20  | | Time:      9:00 a.m. |
21

22

23

24

25

26

27

28

1    Defendants REMEC, Inc., Ronald E. Ragland, and Winston E. Hickman (collectively,

2    "REMEC") in the above-captioned matter pending in the U.S. District Court for the Southern

3    District of California respectfully submit the following opposition to motion by third party

4    witness Lisa Robinson (1) to quash and/or modify deposition subpoenas served on third parties

5    regarding witness Lisa Robinson and/or (2) for protective order (the "Motion to Quash").

6    **I.    STATEMENT OF ISSUES.**

7        1.    Whether the Motion to Quash should be denied because (1) Ms. Robinson does not

8    have a right to privacy with respect to the documents sought by the third party subpoenas issued

9    by REMEC; (2) the documents REMEC seeks in the third party subpoenas are relevant to

10    Ms. Robinson's credibility as a witness in the underlying case as well as to the claims and

11    defenses in the underlying case; (3) the third party subpoenas are not intrusive or abusive; and/or

12    (4) Ms. Robinson has failed to meet her burden of establishing the requisite good cause for a

13    protective order.

14    **II.    INTRODUCTION AND STATEMENT OF PERTINENT FACTS.**

15        This case is a securities class action pending in the United States District Court, for the

16    Southern District of California.  REMEC served various third party subpoenas seeking

17    information regarding former employee and key witness Lisa Robinson's employment in the

18    Northern District of California.  (*See* Declaration of Richard A. Love in Support of Motion to

19    Quash, Ex. 5 (the "Subpoenas").)[1]  Ms. Robinson moves this Court to quash those subpoenas,

20    arguing that the information sought invades her right to privacy and is irrelevant.  Ms. Robinson's

21    motion to quash should be denied for two reasons:  (1) the information sought is not protected by

22    a right to privacy; and (2) the information sought is highly relevant.  The law is clear: the right to

23    privacy does not apply to employment records (such as the records sought here), and thus,

24    Ms. Robinson has not and cannot cite authority providing protection from discovery of the

25    records REMEC seeks.  Moreover, information relating to the credibility of a person having

26    

27    [1] Specifically, REMEC has issued three Subpoenas from the United States District Court for the Northern District of California, to:  Tosco; Peregrine Systems/Hewlett-Packard; and Sorrento Networks c/o Zhone Technologies, Inc.  None of these entities have objected to the production of

28    documents.

1   knowledge of discoverable facts is always relevant and discoverable.  Ms. Robinson is a key fact

2   witness with knowledge of discoverable facts.  Ms Robinson was a REMEC employee and

3   provided Plaintiffs with nearly 60,000 pages of REMEC proprietary information by ignoring the

4   confidentiality obligations of her employment agreement.  Plaintiffs, by their own admission,

5   relied heavily on the documents provided by Ms. Robinson in pleading their case.  Without doubt

6   then, Ms. Robinson's credibility is directly at issue in this matter.  As such, REMEC has good

7   cause for requesting the documents sought by the Subpoenas.  Contrary to Ms. Robinson's

8   unfounded assertions, REMEC did not issue the Subpoenas to harass or intimidate her, and

9   Ms. Robinson does not and cannot establish as much.

10  **III.    LISA ROBINSON PROVIDED 60,000 PAGES OF REMEC PROPRIETARY**
11  **INFORMATION TO PLAINTIFFS IN VIOLATION OF HER EMPLOYMENT**
    **AGREEMENT.**

12          Contrary to Ms. Robinson's assertion in her moving papers that she "is not directly

13  knowledgeable concerning specific legal contentions, issues, claims or defenses in this litigation

14  between the parties" (Moving Papers at p. 1, ln. 9-10), Ms. Robinson is in fact directly

15  knowledgeable about such matters as she is one of Plaintiffs' key witnesses, appears on their

16  witness list, is Plaintiffs' source of over 60,000 pages of REMEC's proprietary information, and

17  is clearly one of the confidential witnesses used throughout Plaintiffs' complaint.  As

18  Ms. Robinson describes in her Moving Papers, she was employed by REMEC as Director of Base

19  Station Operations/Finance.  (Moving Papers at p. 2, ln. 16-17.)  Confidential Witness No. 15 has

20  the same title and is quoted throughout the Fourth Amended Complaint ("FAC") in twenty-one

21  paragraphs (i.e., ¶¶ 30(o), 112, 117, 123, 127, 137, 182, 189, 196-201, 203, 314, 315, 318, 319,

22  331, 340).

23          During her short tenure at REMEC as Director of Base Station Operations/Finance—the

24  three months from June 28, 2004 through September 13, 2004 (just prior to the end of the Class

25  Period in this case)—Ms. Robinson performed the following extraordinary act: she transferred

26  over 60,000 pages of REMEC's proprietary information to her personal email account.  Then,

27  eighteen months after her employment ended at REMEC, she transferred the same REMEC

28  information from her personal email account to a private investigator hired by Plaintiffs' counsel.

-2-

REMEC has direct and compelling evidence that Ms. Robinson provided REMEC's proprietary information to Plaintiffs' investigators.  First, Plaintiffs themselves verify in numerous filings with the Court that Ms. Robinson turned over documents to Plaintiffs' investigators in support of their FAC.  (*See* Declaration of Noah Katsell in support of Opposition to Motion to Quash ("Katsell Decl."), ¶ 2.)  Indeed, they state that the documents Ms. Robinson provided convinced Judge Miller, the District Court Judge, to draw an inference in ruling on REMEC's motion to dismiss the FAC that REMEC acted with deliberate or conscious recklessness.  (*Id*.)  Second, and more significantly, on one of the documents produced to REMEC,[2] the email caption shows that on March 10, 2006 (eighteen months after Ms. Robinson left REMEC), Ms. Robinson forwarded an internal REMEC email dated July 13, 2004 to Ken Keatly.[3]  (*Id*. ¶ 5, Ex. B at PLT000168-169 [redacted].)  Ken Keatly is a private investigator for L.R. Hodges (*Id*. ¶ 6, Ex. C)—Plaintiffs' private investigative firm.  (*Id*. ¶ 7, Ex. D, letter from L.R. Hodges' counsel to counsel for REMEC establishing that L.R. Hodges is Plaintiffs' private investigator.)

Ms. Robinson's act of transferring 60,000 pages of REMEC files to Plaintiffs' private investigator six months after her employment with REMEC ended is a violation of the "Proprietary Information and Invention Assignment Agreement" (the "Agreement") she signed with REMEC when she was hired.  (*Id*. ¶ 8, Ex. E.)  Ms. Robinson clearly violated the Agreement when she (1) failed to return the documents when she left REMEC and (2) thereafter, and more seriously, disclosed the documents to Plaintiffs' investigator.

The Agreement specifically provides that "During the term of my employment and *thereafter*, I will hold in strictest confidence and will not disclose, use or publish any of the Company's Proprietary Information, except as may be required in connection with my work for the Company, or unless expressly authorized by the Company."  (*Id*. at Ex. E ¶ 2 (emphasis

---

[2] Prior to Plaintiffs' response to REMEC's motion to dismiss Plaintiffs' FAC, Plaintiffs produced more than 60,000 pages of REMEC's proprietary information.  (Katsell Decl., ¶ 3, Ex. A, cover letter from Plaintiffs enclosing Plaintiffs' production of documents, Bates ranges PLTF000001 to PLTF067149.)

[3] The majority of the documents produced by Plaintiffs are internal REMEC emails or attachments to internal REMEC emails wherein Ms. Robinson was either the sender or a recipient.  (*Id.* ¶ 4.)

1   added).)  "Proprietary Information" is defined in the Agreement as including, among other things,

2   "business plans, budgets and unpublished financial statements, licenses, prices and costs . . . " (*Id.*

3   at Ex. E ¶ 1)—the very subject matter of the documents she disclosed to Plaintiffs.[4]

4          Ms. Robinson's direct violations of the Agreement coupled with her short tenure at

5   REMEC, and Plaintiffs' heavy reliance on the documents, are circumstances which give REMEC

6   good cause to seek information regarding Ms. Robinson's past employment records and to

7   discover facts relevant to her credibility.  But even without these compelling circumstances,

8   conducting discovery into employment records is routine discovery.  *Ragge v. MCA/Universal*

9   *Studios*, 165 F.R.D. 601, 604 (C.D. Cal. 1995) ("The disclosure of [] employment records is not

10  unusual or unexpected.").

11  **IV.    PROCEDURAL HISTORY.**

12         As mentioned above, this case is a securities class action pending in the United States

13  District Court, for the Southern District of California.  Plaintiffs allege that REMEC has violated

14  Section 10(b) and 20(a) of the Exchange Act.  The case involves Plaintiffs' claims that between

15  September 8, 2003 and September 8, 2004 (the "Class Period"), REMEC: (1) failed to timely

16  write down a goodwill charge; (2) delayed or failed to write down its excess and obsolete

17  inventory; (3) failed to properly account for the sale of "zero-value inventory"; and (4) used

18  flawed assumptions in performing its goodwill impairment and inventory analyses, allegedly due

19  in part to a lack of adequate controls.  Discovery in this matter has been handled, from the outset,

20  by the Honorable Anthony J. Battaglia, who has been assigned to this case since Plaintiffs filed

21  their original complaint on September 7, 2004.  Ms. Robinson has filed an identical motion to

22  quash and/or for protective order with respect to subpoenas that REMEC issued in the Southern

23  District of California requesting records from Ms. Robinson's former employers in that district.

24  ---

[4] Ms. Robinson also directly violated the Agreement when she did not return REMEC documents

25  upon leaving the Company.  Specifically, she agreed that "When I leave the employ of the
    Company, I will deliver to the Company all drawings, notes, memoranda, specifications, devices,

26  formulas, and documents, together with all copies thereof, and any other material containing or
    disclosing any Company Inventions, Third Party Information or Proprietary Information of the

27  Company."  (*Id.* at Ex. F ¶ 11.)  Moreover, Ms. Robinson signed Exhibit B to the Agreement
    acknowledging she had delivered to REMEC all proprietary information of REMEC and

28  acknowledging that she understood her "continuing responsibilities and obligations under [the
    Agreement]."  (*Id.* at Ex. E at p. 6.)

1    The hearing date before Judge Battaglia regarding those subpoenas is currently July 25, 2008.

2    Plaintiffs have also filed a motion for protective order in the Southern District of California

3    regarding all of the subpoenas, including those at issue here.  Plaintiffs' motion for protective

4    order also is set to be heard on July 25, 2008.  Ms. Robinson has also filed an identical motion to

5    quash and/or for protective order with respect to subpoenas that REMEC issued in the District of

6    Arizona requesting records from Ms. Robinson's former employers and education providers in

7    that district.  A status hearing regarding those subpoenas is currently scheduled for August 13,

8    2008.

9    **V.    THE MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER SHOULD BE**

10   **DENIED.**

11         Because Ms. Robinson has not identified any specific or valid privacy interest under

12   California law, let alone federal law, that would warrant protection of her employment records,

13   and because the documents sought are unquestionably relevant to the credibility of a key witness

14   in this case, Ms. Robinson (*see infra*, section IV.B), they should be produced.

15         **A.    Ms. Robinson Does Not Have a Right to Privacy in the Documents Sought by**

16   **the Subpoenas.**

17         Because state privilege law does not apply in federal question cases, and therefore privacy

18   rights derived from the California constitution do not apply in cases based on federal law, the

19   Court need not even consider Ms. Robinson's arguments regarding California privacy rights.

20   *Jackson v. County of Sacramento*, 175 F.R.D. 653, 654 (E.D. Cal. 1997).[5]  In fact, under federal

21   law,[6] "the right to privacy is not a recognized privilege."  *Ragge v. MCA/Universal Studios*, 165

22   F.R.D. 601, 604 n.3 (C.D. Cal. 1995).  "And there is no federal analog to [ ] California privacy

23   rights . . . ."  *Humphreys v. Regents of the Univ. of California*, No. C 04-03808 SI, 2006 WL

24   _____

25   [5] *See also Burrows v. Redbud Comty. Hosp. Dist.*, 187 F.R.D. 606, 610-11 (N.D. Cal. 1998);
     *Jadwin v. County of Kern*, No. 1:07-cv-0026-OWW-TAG, 20 WL 2025093, at *3 (E.D. Cal. May

26   9, 2008); *Thomas v. Hickman*, No. 1:06-cv-00215-AWI-SMS, 2007 WL 4302974, at *4 (E.D.
     Cal. Dec. 6, 2007).

27   [6] Federal law governs the Court's ruling on this motion. Fed. R. Evid. 501.  Despite
     Ms. Robinson's assertions to the contrary, the law of California, the forum state, does not inform

28   federal privilege law.  *See Jaffee v. Redmond*, 518 U.S. 1 (1996) (finding federal psychologist-
     patient privilege).

1   335275, at *1 (N.D. Cal. Feb. 13, 2006). In *Humphreys*, the court explained that federal courts

2   have "explicitly disavowed" *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal.

3   1990), one of the cases cited by Ms. Robinson, because "the law of California, the forum state,

4   does not inform federal privilege law." *Id*. at *1, n.2 (citing *Jackson*, 175 F.R.D. at 654); *see also*

5   *Allen v. Woodford*, No. CV-F-05-1104 OWW LJO, 2007 WL 309485, at *6 (E.D. Cal. Jan. 30,

6   2007) (citing *Jackson* as "overruling cases that held as a 'matter of comity' state privacy privilege

7   controls").

8        Even still, if the Court were to consider such state privacy rights, Ms. Robinson has failed

9   to articulate any protection for the records sought under these State laws.[7] One California federal

10  court, in fact, even where it took state privacy rights into account, held that employment records

11  are discoverable in cases where they relate to the credibility of a witness. In *Ragge* (applying a

12  simple balancing test and weighing the right to privacy against the need for disclosure in

13  litigation), the court granted the plaintiff's request for documents in the defendants' personnel

14  files and held that "Rule 26 [] permits the discovery of information which 'may simply relate to

15  the *credibility* of a witness or other evidence in the case.'" 165 F.R.D. at 603 (emphasis in

16  original). Specifically, the court explained that documents in personnel files pertaining to

17  "promotions or demotions, disciplinary proceedings, work performance reviews and evaluations,

18  and complaints, are relevant, among other things, to . . . the credibility of witnesses . . . ." *Id*. at

19  604.

20        The *Ragge* court also rejected defendants' argument that the documents were protected by

21  their right to privacy. *Id*. The court noted that:

22        Defendants have not cited any case law prohibiting the discovery of
          information in an employee's personnel file on the grounds it is
23        privileged or protected by the right to privacy. By its nature, the
          requested information does not pertain to sexual, health or financial
24        matters, areas generally considered to be private or confidential.
          The disclosure of these employment records is not unusual or
25        unexpected.

26  *Id*. Further, the court noted that "[e]ven if the requested documents in defendants' personnel files

27  
28  ─────────────────────
    [7] While federal courts may take into account state privacy law, it is not binding on the court.
    *Heathman v. U.S Dist. Court*, 503 F.2d 1032, 1034 (9th Cir. 1974).

1    are protected by defendants' privacy right, that right may, nevertheless, be invaded for litigation

2    purposes." *Id.* Even if the Court here considers Ms. Robinson's right to privacy, she has not

3    articulated that the documents sought are protected by her right to privacy.

4        Similar to the *Ragge* case, REMEC is not seeking disclosure of sensitive information such

5    as medical treatment records and sick leave requests. Instead REMEC is seeking records which

6    specifically bear on the character and credibility of Ms. Robinson, such as promotions or

7    demotions, disciplinary proceedings, and work performance reviews—the identical categories of

8    information sought and ordered to be produced in the *Ragge* case.[8]

9        **B.    The Subpoenas Request Highly Relevant Information.**

10        The scope of discovery is described in Federal Rule of Civil Procedure, Rule 26(b). That

11    rule provides for broad boundaries: parties may obtain discovery regarding any nonprivileged

12    matter that is relevant to any party's claim or defense – including the existence, description,

13    nature, custody, condition, and location of any documents or other tangible things and the identify

14    and location of persons who know of any discoverable matter. Fed. R. Civ. P. 26(b). Federal

15    Rule of Civil Procedure, Rule 26(b) is liberally interpreted to allow a broad range of discovery of

16    all information reasonably calculated to lead to discovery of admissible evidence; but the

17    discoverable information need not be admissible at the trial. *Id.*; *Willis v. Ritter*, 2007 WL

18    2455873,* 2 (S.D. Cal. 2007); *see also* 8 Wright & Miller, *Federal Practice and Procedure*: Civil

19    § 2008 (2008).

20    _____

[8] The cases cited by Ms. Robinson in support of the right of privacy are inapposite. For example, Ms. Robinson cites to *Breed v. United States District Court*, 542 F.2d 1114, 1116 (9th Cir. 1976), which found that the discovery of records relating to juveniles in the custody of the California Youth Authority was proper. This case is not only factually different from the matter before this Court, but the holding is *directly contrary* to Ms. Robinson's argument and in support of REMEC's. Likewise, Ms. Robinson's citation to *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 551 (E.D. Cal. 1990) is completely inappropriate, as it has been overruled. As explained in *Humphreys v. Regents of the Univ. of California*, No. C 04-03808 SI, 2006 WL 335275, at *1 (N.D. Cal. Feb. 13, 2006), federal courts have "explicitly disavowed" *Cook* because "the law of California, the forum state, does not inform federal privilege law." And finally, Ms. Robinson's reliance on *Johnson v. Thompson*, 971 F.2d 1487, 1497 (10th Cir. 1992) does not support her position. In *Johnson*, the court upheld the non-disclosure of the names of parents of infants who participated in a study involving a "decision whether to administer heroic life-sustaining treatment to a severely handicapped newborn." *Id.* The court found that "[p]arents who have had to make such a decision are entitled to privacy and confidentiality." *Id.* This case is clearly inapposite. Accordingly, Ms. Robinson has no legal support for her position that her employment records are privileged.

1    Included within the bounds of Rule 26(b) is discovery relating to the credibility of

2    witnesses having knowledge of discoverable facts.  8 Wright & Miller, *Federal Practice and*

3    *Procedure*: Civil § 2015 (2008).  Indeed, courts have found that Rule 26 unequivocally permits

4    discovery of information that relates to the *credibility* of a witness.  *Paulsen v. Case Corp*., 168

5    F.R.D. 285, 287 (C.D. Cal. 1996) (citing Schwarzer, Tashima & Wagstaffe, *California Practice*

6    *Guide: Federal Civil Procedure Before Trial*, § 11.21 (1996 revised) (emphasis in original)); *see*

7    *also* 8 Wright & Miller, *Federal Practice and Procedure*: Civil § 2015 (2008) ("Discovery is

8    commonly allowed in which the discovering party seeks information with which to impeach

9    witnesses for the opposition.").  REMEC is entitled to obtain discovery from the various

10    custodians of records regarding Lisa Robinson, a non-party, based on the same relevance

11    standards that govern discovery between parties.  *Shoen v. Shoen*, 5 F.3d 1289, 1292 (9th Cir.

12    1993) (applying Rule 26(b)(1) relevance standard to non-party subpoena); *Gonzales v. Google,*

13    *Inc*., 234 F.R.D. 674, 679 80 (N.D. Cal. 2006) (applying Rule 26(b)(1) relevance standard to non-

14    party subpoena).

15    Ms. Robinson's assertion that the documents sought by the Subpoenas are irrelevant is

16    without merit.  Clearly there may be information in her employment files which is relevant to her

17    credibility—as allowed by Federal Rule of Civil Procedure, Rule 26(b).  Specifically, the

18    documents sought by REMEC pertaining to Ms. Robinson's promotions or demotions,

19    disciplinary proceedings, work performance reviews are relevant, among other things, to her

20    credibility and bias.  Because information relating to the credibility of a person having knowledge

21    of discoverable facts (as has been established with regard to Ms. Robinson (*supra* Sections I and

22    II)) is always relevant, the documents sought by the Subpoenas should be produced.  *Paulsen*,

23    168 F.R.D. at 287 (C.D. Cal. 1996) (citing Schwarzer, Tashima & Wagstaffe, *California Practice*

24    *Guide: Federal Civil Procedure Before Trial*, § 11.21 (1996 revised)).

25    **C.    The Subpoenas Are Not Abusive.**

26    The Subpoenas issued by REMEC are narrowly tailored to seek information which

27    specifically bears on the character and credibility of Ms. Robinson, such as promotions or

28    demotions, disciplinary proceedings, and work performance reviews.  REMEC is not seeking

-8-

1   disclosure of sensitive information such as medical treatment records and sick leave requests.

2   Moreover, any privacy concerns that Ms. Robinson may have related to health records, social

3   security numbers and financial information can be redacted, which REMEC has specifically

4   offered to do. (*See* Katsell Decl. ¶ 9, Ex. F, June 10, 2008 letter from Katsell to Richard Love.)

5   Also, the parties are finalizing a protective order in this matter that would allow the information

6   sought to remain confidential and only available to the litigants and other authorized individuals

7   under the protective order.

8       Finally, Ms. Robinson leans on the fact that (1) she has not yet been deposed in this matter

9   and (2) that REMEC has not attempted to obtain the information sought by the Subpoenas from

10  other sources, as balancing in favor of blocking production of documents. For one, REMEC is

11  not aware of, and Ms. Robinson has failed to identify, any other witnesses other than

12  Ms. Robinson's former employers that would have her files. Moreover, to depose Ms. Robinson

13  prior to obtaining the records sought by the Subpoenas turns Ms. Robinson's argument on its

14  head. If REMEC were to depose Ms. Robinson regarding her former employment without

15  documents, and Ms. Robinson revealed that she was not in possession of her employee files and

16  that REMEC would have to obtain the information from the same subpoenaed entities at issue

17  here and redepose Ms. Robinson, efficiency would be lost. Discovery of the documents first,

18  followed by Ms. Robinson's deposition, is the "less intrusive avenue for discovery" that

19  Ms. Robinson alludes to in her Motion to Quash. (Moving Papers at p.10, ln. 10-12.)

20  Accordingly, the Subpoenas are not abusive.

21      **D.      REMEC's Interest in the Highly Relevant Information Sought in the Subpoenas Outweighs Any Potential Injury to Ms. Robinson.**

22

23      Pursuant to Rule 26(c) of the Federal Rules of Civil Procedure, a court may issue a

24  protective order only if there is a showing of good cause and the order is necessary to "protect a

25  party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed.

26  R. Civ. P. 26(c). The party seeking a protective order bears the burden of establishing good cause

27  for the order. Fed. R. Civ. P. 26(c); *In re Adobe Sys., Inc. Sec. Litig.*, 141 F.R.D. 155, 158 (N.D.

28  Cal. 1992). In deciding whether good cause for a protective order has been established, the court

DLA PIPER US LLP
SAN DIEGO

WEST\21465692.1
336195-000005

1    will balance the potential injury to the party from whom discovery is sought against the interests

2    of the party seeking the information. *In re Adobe Systems, Inc. Securities Litigation*, 141 F.R.D.

3    at 158; *Benchmark Design, Inc. v. BDC, Inc.*, 125 F.R.D. 511, 512 (D. Or. 1989).

4        Ms. Robinson has not met her burden of establishing good cause for a protective order.

5    Despite her unfounded, inflammatory accusations, Ms. Robinson has made no showing that the

6    information sought in the Subpoenas would be annoying, embarrassing, oppressive, impose an

7    undue burden or expense, or would in anyway constitute an abuse of the discovery process.

8        Here, as discussed above, REMEC has a valid interest in the information sought in the

9    Subpoenas—information specifically bearing on the character and credibility of Ms. Robinson

10   (*see supra*, sections IVA and B).  It is crucial for REMEC's defense of this matter to have the

11   opportunity to assess the character, credibility and bias of Ms. Robinson—a key witness in this

12   matter by her own and Plaintiffs' admission.

13   **VI.    CONCLUSION.**

14       For the foregoing reasons, REMEC respectfully requests this Court deny Lisa Robinson's

15   motion to quash and/or modify deposition subpoenas served on third parties regarding witness

16   Lisa Robinson and/or for a protective order.

17   Dated:  July 10, 2008

18                        DLA PIPER US LLP

19

20                        By  s/Noah A. Katsell
                            NOAH A. KATSELL
21                          Attorneys for Defendants
                            REMEC, INC., RONALD E. RAGLAND,
22                          WINSTON E. HICKMAN
                            E-mail: noah.katsell@dlapiper.com

23

24

25

26

27

28

1  ROBERT W. BROWNLIE (Bar No. 138793)
   robert.brownlie@dlapiper.com
2  GERARD A. TRIPPITELLI (Bar. No. 235788)
   jerry.trippitelli@dlapiper.com
3  NOAH A. KATSELL (Bar No. 217090)
   noah.katsell@dlapiper.com
4  DLA PIPER US LLP
   401 B Street, Suite 1700
5  San Diego, CA  92101-4297
   Tel:  619.699.2700
6  Fax:  619.699.2701

7  Attorneys for Defendants
   REMEC, INC., RONALD E. RAGLAND,
8  WINSTON E. HICKMAN

9
                    UNITED STATES DISTRICT COURT
10
                  NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13  IN RE:                              CASE NO.  CV 08 80 124 MISC. (EDL)

14  REMEC INCORPORATED SECURITIES          [04 CV 1948 JLS (AJB)
    LITIGATION                             Southern District of California]
15
    This Document Relates to:           DECLARATION OF NOAH A. KATSELL
16                                       IN SUPPORT OF OPPOSITION TO
               ALL ACTIONS               MOTION BY THIRD PARTY WITNESS
17                                       LISA ROBINSON TO QUASH AND/OR
                                         MODIFY SUBPOENAS AND/OR FOR
18                                       PROTECTIVE ORDER

19                                       Judge:     Hon. Elizabeth D. Laporte
                                         Crtrm:     E
20                                       Date:      August 5, 2008
                                         Time:      9:00 a.m.
21

22

23

24

25

26

27

28

DLA PIPER US LLP
  SAN DIEGO        WEST\21462090.1        KATSELL DECL. ISO OPP'N TO MOTION TO QUASH — CV 08 80 124 MISC. (EDL)
                   336195-000005

1         1.      I am an attorney at law duly licensed to practice before the courts of the State of

2    California, and I am an attorney with the law firm of DLA Piper US LLP, attorneys of record for

3    Defendants REMEC, Inc., Ronald E. Ragland, and Winston E. Hickman (collectively,

4    "REMEC") pending in the U.S. District Court for the Southern District of California in the above-

5    captioned action.  I have personal knowledge of the matters set forth in this Declaration.  If called

6    as a witness, I could and would competently testify to these matters.

7         2.      Plaintiffs themselves verify in numerous filings with the Court before which this

8    case is pending that Ms. Robinson turned over documents to Plaintiffs' investigators in support of

9    their Fourth Amended Complaint ("FAC").  For example, in Plaintiffs' motion for protective

10   order regarding the subpoenas for documents relating to Ms. Robinson, they state that the

11   documents Ms. Robinson provided convinced Judge Miller, the District Court Judge, to draw an

12   inference in ruling on REMEC's motion to dismiss the FAC that REMEC acted with deliberate or

13   conscious recklessness.  Likewise in a recent scheduling motion Plaintiffs again verify that

14   Ms. Robinson provided the key information which led to Judge Miller upholding the FAC.

15        3.      Attached hereto as Exhibit A is a true and correct copy of the March 23, 2007

16   cover letter from Plaintiffs enclosing Plaintiffs' production of documents, Bates ranges

17   PLTF000001 to PLTF067149.

18        4.      I have reviewed part of Plaintiff's production of documents, Bates ranges

19   PLTF000001 to PLTF067149, and the majority of the documents are internal REMEC emails or

20   attachments to internal REMEC emails wherein Ms. Robinson was either the sender or a

21   recipient.

22        5.      Attached hereto as Exhibit B is a true and correct redacted copy of document with

23   Bates Nos. PLT000168-169 produced by Plaintiffs showing that on March 1, 2006 (eighteen

24   months after Ms. Robinson left REMEC) Ms. Robinson forwarded an internal REMEC email

25   dated July 13, 2004 containing REMEC's proprietary information to Ken Keatly.  The document

26   was originally redacted by Plaintiffs (at the top of the page) and has been redacted further by

27   counsel for REMEC in light of the pending protective order that will be entered in the Southern

28   District of California.

6.      On information and belief, I understand that Ken Keatly is a private investigator for Plaintiffs' private investigation firm, L.R. Hodges.  Attached hereto as Exhibit C is at true and correct copy of a publicly available political contribution document, in which counsel for REMEC has redacted the political contribution information, showing that Ken Keatly is a private investigator at L.R. Hodges.

7.      Attached hereto as Exhibit D is a true and correct copy of a June 4, 2008 letter from L.R. Hodges' counsel to counsel for REMEC establishing that L.R. Hodges is Plaintiffs' private investigator.

8.      Attached hereto as Exhibit E is a true and correct copy of REMEC's Proprietary Information and Invention Assignment Agreement that Ms. Robinson signed on her date of hire with REMEC on June 28, 2004.

9.      Attached hereto as Exhibit F is a true and correct copy of the June 10, 2008 letter from me to Richard Love offering to redact, if necessary, any sensitive and/or confidential information from the documents sought by the subpoenas to Ms. Robinson's employers and educational institutions.

10.     It is my understanding, from a review of REMEC's internal personnel files, that Lisa Robinson left REMEC after only three months of employment at her own volition.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.  Executed this 10th day of July, 2008 in San Diego, California.


                                    /s/ Noah A. Katsell
                                    _____
                                    NOAH A. KATSELL
                                    Attorneys for Defendants
                                    REMEC, INC., RONALD E. RAGLAND,
                                    WINSTON E. HICKMAN
                                    E-mail: noah.katsell@dlapiper.com

**EXHIBIT A**



NEW YORK
LOS ANGELES
[illegible]

March 23, 2007

Robert W. Brownlie
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101

     Re:    *Remec*

Dear Mr. Brownlie:

    Pursuant to Rule 26(a)(1), enclosed please find Plaintiffs' production of documents, bates ranges PLTF000001 to PLTF067149.

    Should you have any questions, please do not hesitate to call me at (213) 617-1200. Thank you.

                         Very truly yours,

                         Cheryl A. Williams

CAW:ff
Encls.

**Milberg Weiss & Bershad LLP**

One California Plaza · 300 South Grand Avenue, Suite 3900 · Los Angeles, CA 90071
213-617-1200 · Fax 213-617-1975 · www.milbergweiss.com

**EXHIBIT B**

Redacted

---

**From:** Lisa Robinson [mailto:lisa_robinson@cox.net]
**Sent:** Friday, March 10, 2006 12:05 AM
**To:** 'Ken Keatly'
**Subject:** remec 23

---

**From:** Gilmore, Miles
**Sent:** Tuesday, July 13, 2004 10:08 AM
**To:** Hickman, Winston (US - San Diego); Firouzbakht, Farid (US - San Diego); Tom, Penny; Alvord, Jeff (US - Milpitas, CA); Loy, Mike; Bourke, Ian (UK - Aylesbury); Holbrook, Kevin; Piazza, Dave (US - Milpitas, CA); Gallagher, Ed (US - Milpitas, CA); Butler, Keith; Bitton, Vance; Cole, Bill (US - Florida); Kananen, Jyrki (Finland - Oulu); Jeng, Jessica (US - Milpitas, CA); Drummy, John; Newman, Dave; Madden, Jeff; Kaney, Carl; Rogers, Joe; Pleska, AnneMarie; Robinson, Lisa; Sweeney, Bill (US - Del Mar, CA)
**Subject:** Weekly AR Reports 7-9-04

<<Finland AR 7-9-04.xls>> <<China-Beijing AR 7-9-04.xls>> <<China-Shanghai AR 7-9-04.xls>> <<Paradigm-7-9-04.xls>> <<Philippines AR 7-9-04.xls>> <<U.K. AR 7-9-04.xls>> <<U.S.- AMP's-7-9-04.xls>> <<U.S.-ALP's 7-9-04.xls>> <<U.S.-Componets-7-9-04.xls>> <<U.S.-Filters-7-9-04.xls>> <<U.S.-Mfg. Services-7-9-04.xls>> <<U.S.-ODU-7-9-04.xls>>

All,

REDACTED PER REMEC

Thank you.

    PLTF 000168

FW: Remec 21 not FW: remec 23

Miles

3/10/2006

PLTF 000169

**EXHIBIT C**



older results ☑

*was given by people who identified their last name as "Keatly" and*
*first name as "Ken".*

REDACTED

| Donor | Contribution | Address |
|-------|-------------|---------|
| Ken Keatly | Updated | REDACTED |
| Private Investigator L.R.Hodges & Assoc | | |

**Did you know that $114,584 was donated in this donor's zip code (92008)? Click here to find out how much was given and to who.**

**EXHIBIT D**

# DUCKOR
# SPRADLING
# METZGER
# & WYNNE
A LAW CORPORATION

3043 4th AVENUE
SAN DIEGO, CALIFORNIA 92103
TELEPHONE (619) 209-3000
FACSIMILE (619) 209-3043
www.dsmwlaw.com

WRITER'S E-MAIL ADDRESS
chackel@dsmwlaw.com

GARY J. SPRADLING
SCOTT L. METZGER
JOHN C. WYNNE
BERNARD L. KLEINKE
LI-AN D. LEONARD
K. JILL OSMARS
KEVIN M. BAGLEY*
ANNA F. ROPPO
MICHAEL A. REED
ROBERT M. SHAUGHNESSY
IRVIN C. SPRADLING
GEOFFREY C. CHACKEL
KEVIN L. WHEELER
DOUGLAS W. LYTLE
MARISA JANINE-PAGE
ELIZABETH BURKE VANN
SCOTT M. LOHNER*‡
ANNETTE C. CLARK
ROSE M. HUELSKAMP
LAURA E. PERSHAE

*ADMITTED IN INDIANA ONLY

‡CERTIFIED SPECIALIST, TAXATION LAW
STATE BAR OF CALIFORNIA
BOARD OF LEGAL SPECIALIZATION

‡REGISTERED PATENT ATTORNEY

OF COUNSEL
MICHAEL DUCKOR · Retired
JERRY M. CANNON
TYLER M. CRAMER
JOHN H. QUINN, JR.

June 4, 2008

<u>VIA FACSIMILE AND U.S. MAIL</u>

Robert Brownlie, Esq.
Paul A. Reynolds, Esq.
DLA PIPER US LLP
401 B Street, Suite 1700
San Diego, CA 92101-4297

Re:     ***Remec Incorporated Securities Litigation***
        Subpoena to L.R. Hodges & Assoc., Ltd
        Notice of Deposition to Lynn Hodges

Dear Mr. Brownlie:

This firm represents L.R. Hodges & Associates ("LRHA") and Lynne Hodges. I am writing to formally assert objections to the above referenced subpoena and notice of deposition and to notify you that neither Ms. Hodges nor any representative of LRHA will appear on the noticed dates or times or produce documents as requested.

LRHA (of which Ms. Hodges is the sole owner) was retained by Milberg, LLP to perform private investigative services relative to the above referenced litigation. As such, the information, impressions, thoughts, and any resulting documentation obtained or prepared by LRHA and Ms. Hodges relative to the investigation is protected from disclosure by the attorney work product doctrine. In fact, a similar attempt in 2004 to obtain LRHA's investigative work product was quashed by the Southern District of California on this basis. I have attached, for your review, a copy of Magistrate Judge Battaglia's August 9, 2004, Order in the *Applied Micro Circuits Corp. Securities Litigation* barring the deposition of LRHA based upon the work product doctrine.

In addition, the subpoena is objectionable because it unduly interferes with LRHA's business operations. The foundation of LRHA's business is the ability to conduct a thorough and accurate investigation on the attorneys' behalf. Your subpoena and notice of deposition threaten to significantly interrupt and disturb this process by invading the confidential nature of LRHA's work and impose a chilling effect on its relationship with counsel – a result my clients are not willing to accept.

DUCKOR SPRADLING METZGER & WYNNE
A LAW CORPORATION

June 4, 2008
Page 2

Moreover, the document requests at issue, by definition, improperly seek discovery of LRHA's confidential and/or proprietary trade secrets in the form of its contractual arrangement with counsel and its investigative techniques and procedures that are wholly irrelevant to the issues pending in this litigation. The competitive advantage my clients have developed is unique and confidential to them and will not be divulged for others to learn from.

Finally, neither Ms. Hodges nor any LRHA representative is a witness to the relevant issues in this litigation and there is no indication that the information you seek from them is not obtainable through the normal discovery process. Please withdraw the subpoena and notice of deposition immediately. If you not willing to do so, these matters will be submitted to the court for resolution.

Sincerely,

DUCKOR SPRADLING METZGER & WYNNE
A Law Corporation

By: _Geoffrey C. Chackel_____
Geoffrey C. Chackel

Encl.

384086.1

`

**EXHIBIT E**

REMEC, INC.

## Proprietary Information and Invention Assignment Agreement

In consideration of my employment, or continued employment, as the case may be, by REMEC, Inc., or an affiliate or successor in business (hereafter collectively referred to as the "Company"), and the compensation now and hereafter paid to me, I hereby agree with the Company as follows:

1.    Proprietary Information.    The term "Proprietary Information" shall mean trade secrets, confidential knowledge, data or any other proprietary information of the Company and each of its subsidiaries or affiliated companies. "Proprietary Information" includes (a) inventions, trade secrets, ideas, processes, formulas, data, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques relating to the business or proposed products of the Company and which were learned or discovered by me during the term of my employment with the Company (hereafter collectively referred to as "Inventions"); and (b) information regarding plans for research, development, new products and services, marketing and selling, business plans, budgets and unpublished financial statements, licenses, prices and costs, suppliers and customers which were learned or discovered by me during the term of my employment with the Company; and information regarding the skills and compensation of other employees of the Company.

2.    Recognition of Company's Rights; Nondisclosure.    During the term of my employment and thereafter, I will hold in strictest confidence and will not disclose, use or publish any of the Company's Proprietary Information, except as may be required in connection with my work for the Company, or unless expressly authorized by the Company. I hereby assign to the Company any rights I may have or acquire in such Proprietary Information and recognize that all Proprietary Information shall be the sole property of the Company and that the Company shall be the sole owner of all patent rights, copyrights, trade secret rights and all other rights throughout the world (collectively, "Proprietary Rights") in connection with such Proprietary Information.

3.    Third Party Information.    I understand that the Company may from time to time receive confidential or proprietary information from third parties ("Third Party Information") subject to the Company's duty to maintain the confidentiality of such information and to use it only for certain limited purposes. During the term of my employment and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, except in connection with my work for the Company, Third Party Information unless expressly authorized by the Company.

4.    Assignment of Inventions.

(a)    I hereby assign to the Company all my right, title and interest in and to any and all Inventions (and all Proprietary Rights with respect to those Inventions) whether or not patentable or registrable under copyright or similar statutes that were made or conceived or reduced to practice or learned by me, either alone or jointly with others, during the period of my employment with the Company. Inventions assigned to or as directed by the Company by this paragraph 4(a) are hereafter referred to as "Company Inventions."

(b)    I acknowledge that all original works of authorship which are made by me (solely or jointly with others) during the term of my employment with the Company and that are within the scope of my employment and which are protectable by copyright are "works made for hire," as that term is defined in the United States Copyright Act (17 U.S.C., Section 101).

5.     Enforcement of Proprietary Rights. I will assist the Company in every proper way to obtain and enforce United States and foreign Proprietary Rights relating to Company Inventions in any and all countries.   I will execute, verify and deliver such documents and perform such other acts (including appearances as a witness) as the Company may reasonably request for use in applying for, obtaining, perfecting, evidencing, sustaining and enforcing such Proprietary Rights and the assignment of such Proprietary Rights. In addition, I will execute, verify and deliver assignments of such Proprietary Rights to the Company or its designee.  My obligation to assist the Company with respect to Proprietary Rights relating to such Company Inventions in any and all countries shall continue beyond the termination of my employment, but the Company shall compensate me at a reasonable rate after my termination for the time actually spent by me at the Company's request on such assistance.

In the event the Company is unable for any reason, after reasonable effort, to secure my signature on any document needed in connection with the actions specified in the preceding paragraph, I hereby irrevocably designate and appoint the Company and its duly authorized officers and agents as my agent and attorney in fact, to act for and in my behalf to execute, verify and file any such documents and to do all other lawfully permitted acts to further the purposes of the preceding paragraph thereon with the same legal force and effect as if executed by me.  I hereby waive and quitclaim to the Company any and all claims, of any nature whatsoever, which I now or may hereafter have for infringement of any Proprietary Rights assigned hereunder to the Company.

6.     Obligation to Keep Company Informed.  During the period of my employment, I will promptly disclose to the Company fully and in writing and will hold in trust for the sole right and benefit of the Company any and all Inventions.  In addition, after termination of my employment, I will disclose all patent applications filed by me within one (1) year after termination of employment.

7.     Other Inventions.  Inventions, if any, patented or unpatented, which I made prior to the commencement of my employment with the Company are excluded from the scope of this Agreement. To preclude any uncertainty, I have set forth on Exhibit A to this Agreement a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement.  If disclosure of any such Invention on Exhibit A would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Inventions in Exhibit A, but am to inform the Company that all Inventions have not been listed for that reason.

I understand that this Agreement does not apply to an invention for which no equipment, supplies, facility or Proprietary Information of the Company was used and which was developed entirely on my own time and (i) which does not relate (a) to the business of the Company or (b) to the Company's actual or demonstrably anticipated research or development or (ii) which does not result from any work performed by me for the Company.

8.     Other Activities; Conflicts of Interest.

(a)     During the term of my employment with the Company, I will not, directly or indirectly, participate in the ownership, management, operation, financing or control of, or be employed by or consult for or otherwise render services to, any person, corporation, firm or other entity which competes with the Company in the conduct of the business of the Company as conducted or as proposed to be conducted, nor shall I engage in any other activities that conflict with my obligations to the Company.  If I have questions about whether any proposed activities would violate this provision, I will discuss it with the appropriate officer of the Company.

(b)     During my employment with the Company and for a period of one (1) year after my employment with the Company is terminated for any reason, I will not, without the express prior written consent of the Company, individually or on behalf of any other person, corporation, firm or other entity, solicit or encourage any employee of the Company or any subsidiary of the Company to terminate his or her employment with the Company or such subsidiary, or solicit the business of any client or customer of the Company (other than on behalf of the Company).

9.     No Improper Use of Materials.  During my employment by the Company I will not improperly use or disclose any confidential information or trade secrets, if any, of any former employer or any other person to whom I have an obligation of confidentiality, and I will not bring onto the premises of the Company any unpublished documents or any property belonging to any former employer or any other person to whom I have an obligation of confidentiality unless consented to in writing by that former employer or person.  I also agree that I will not use any unauthorized copies of computer software in performing work for the Company.

10.     No Conflicting Obligation.  I represent that my performance of this Agreement and as an employee of the Company does not and will not breach any agreement to keep in confidence information acquired by me in confidence or in trust prior to my employment by the Company.  I have not entered into, and I agree I will not enter into, any agreement either written or oral in conflict with this Agreement.

11.     Return of Company Documents.  When I leave the employ of the Company, I will deliver to the Company all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company, and will sign and return to the Company the form attached as Exhibit B.  I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice.

12.     Legal and Equitable Remedies.  Because my services are personal and unique and because I may have access to and become acquainted with the Proprietary Information of the Company, the Company shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond, without prejudice to any other rights and remedies that the Company may have for a breach of this Agreement.

13.     Notices.  Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing.  Such notice shall be deemed given upon personal delivery to the appropriate address or if sent by certified or registered mail, three days after the date of mailing.

14.     General Provisions.

14.1     Governing Law.  THIS AGREEMENT WILL BE GOVERNED BY AND CONSTRUED ACCORDING TO THE LAWS OF THE STATE OF _____, APPLICABLE TO A CONTRACT EXECUTED AND PERFORMED INSUCH STATE, WITHOUT GIVING EFFECT TO THE CONFLICTS OF LAWS PRINCIPLES THEREOF.

14.2     Entire Agreement.  This Agreement sets forth the entire agreement and understanding between the Company and myself relating to the subject matter hereof and supersedes and merges all prior discussions between us.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by the party to be charged.  Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.  As used in this Agreement, the period of my employment includes any time during which I may be retained by the Company as a consultant.

14.3    Severability. If one or more of the provisions in this Agreement are deemed unenforceable by law, then the remaining provisions will continue in full force and effect.

14.4    Successors and Assigns. This Agreement will be binding upon my heirs, executors, administrators and other legal representatives and will be for the benefit of the Company, its successors and is assigns.

14.5    Survival. The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee.

14.6    Employment. I agree and understand that nothing in this Agreement shall confer any right with respect to continuation of employment by the Company, nor shall it interfere in any way with my right or the Company's right to terminate my employment at any time, with or without cause.

14.7    Waiver. Any waiver by the Company of any term of this Agreement must be made in writing by an authorized officer of the Company. No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

This Agreement shall be effective as of the first day of my employment with the Company, namely: __6/28__, 200_4_.

I UNDERSTAND THAT THIS AGREEMENT AFFECTS MY RIGHTS TO INVENTIONS I MAKE DURING MY EMPLOYMENT, AND RESTRICTS MY RIGHT TO DISCLOSE OR USE THE COMPANY'S PROPRIETARY INFORMATION DURING OR SUBSEQUENT TO MY EMPLOYMENT.

I HAVE READ THIS PROPRIETARY INFORMATION AND INVENTIONS AGREEMENT CAREFULLY AND UNDERSTAND ITS TERMS. I HAVE COMPLETELY FILLED OUT EXHIBIT A TO THIS AGREEMENT.

Dated: __6/28/2004__

Signature

_Lisa Robinson_
Name of Employee

_1465 Westwood Place Oceanside CA_
Address

ACCEPTED AND AGREED TO:
REMEC, INC.

_____
_____

By: _____
Name: _____
Title: _____

**EXHIBIT A**

REMEC, INC.

_____

_____

Gentlemen:

1    The following is a complete list of all inventions or improvements relevant to the subject matter of my employment by REMEC, Inc. (the "Company") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my employment by the Company that I desire to remove from the operation of the Company's Proprietary Information and Inventions Agreement.

_____    No inventions or improvements.

_____    See below:

_____    Additional sheets attached.

2.    I propose to bring to my employment the following materials and documents of a former employer:  SEC TEMPLATES, SOX TEMPLATES  FREELY AVAILABLE ON WWW.

_____    No materials or documents.

_____    See below:

Signature

**EXHIBIT B**

<u>To be Completed Upon Termination of Employment</u>

I have delivered to the Company all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Company Inventions, Third Party Information or Proprietary Information of the Company.

I acknowledge that I have received a copy of this Proprietary Information and Inventions Agreement and that I have read and understand my continuing responsibilities and obligations under it.

Dated: __6/28/2004__

_____
Signature

__Lisa Robinson__
Name of Employee

__1465 Westwood Pl.  Oceanside CA 92054__
Address

REMEC, INC.

By: _____

Name: _____

Title: _____

**EXHIBIT F**



DLA Piper US LLP
401 B Street, Suite 1700
San Diego, California 92101-4297
www.dlapiper.com

Noah A. Katsell
noah.katsell@dlapiper.com
T  619.699.2632
F  619.764.6632

Our File No. 336195-5

*Via Facsimile (310) 477-3922*

June 10, 2008

Richard A. Love, Esq.
11601 Wilshire Blvd., Suite 2000
Los Angeles, CA 90025

Re: *In re REMEC Incorporated Securities Litigation*, Case No. 04cv1948 JS (AJB)

Dear Mr. Love:

I write in response to your June 5, 2008 letter to Robert Brownlie of this firm regarding Lisa Robinson and in response to your voicemail of today requesting a meet and confer.

Your arguments that the documents sought by the Custodial Subpoenas lack relevance and are subject to the right of privacy are without merit.

<u>Relevance</u>

Lisa Robinson is a witness in this case. That her credibility is an issue because she is a witness cannot be disputed. The Custodial Subpoenas to her current and former employers for personnel records and to schools she attended for her educational records are routine document discovery requests for documents that are reasonably calculated to get documents that bear on her credibility. Indeed, her background is made more relevant since we have ample evidence that she unlawfully removed documents from REMEC and provided them to a third party. Curiously, despite having only worked at REMEC for approximately three months, Ms. Robinson appears to have sent approximately 60,000 pages of REMEC documents to her personal e-mail account and later sent them to a third party. Discovery into whether Ms. Robinson has a history of this type of conduct is clearly permissible and relevant.

<u>Right of Privacy</u>

As an initial matter, California Code of Civil Procedure § 1985.6, does not apply in this case since this matter is pending before a federal court. Additionally, discovery into personnel files is routine. If your concern is access to social security numbers and other similar personal information, there are less drastic ways to protect agent disclosure of this information than filing a protective order, or withdrawal of the Custodial Subpoenas.



Richard A. Love, Esq.

Page Two

<u>Timing</u>

REMEC will not withdraw the Custodial Subpoenas. REMEC will also not agree to continue the production dates to and including July 8, 2008. There is no basis for your request for REMEC to do so, and the discovery cutoff date in this matter is fast approaching. We would like these requested materials before we depose Ms. Robinson. If we delay the return dates to July 8 and you opt to engage in motion practice, we will not have enough time to complete discovery.

We believe that this letter addresses your concerns. If there is anything else to discuss, please let us know.

Very truly yours,

**DLA Piper US LLP**

Noah A. Katsell

NAK:ras

WEST\21442777.1
336195-000005